829 F.2d 1121
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frances Parrish Eason STRICKLAND, Defendant-Appellant.
 No. 87-5049.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 31, 1987.
Decided Sept. 23, 1987.
 
 (William E. Martin, Federal Public Defender, Todd C. Conormon, Assistant Federal Public Defender, on brief), for appellant.
 (Samuel T. Currin, United States Attorney; Thomas E. Booth, Attorney, Department of Justice, on brief), for Appellee.
 Before CHAPMAN and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Frances Parrish Eason Strickland appeals from her conviction on two counts of concealing a material fact from the Farmers Home Administration (FmHA) relating to her interest credit loan in violation of 18 U.S.C. Sec. 1001. She alleged error in the jury instructions. We find no error and affirm.
 
 
 2
 In 1978, when she first obtained an interest credit loan from the FmHA, Frances Eason was divorced and living alone. The loan reduced the size of the monthly mortgage payment on her home. She married Roy Strickland in June 1980. The Stricklands both testified that they married for financial convenience and did not intend to live together. However, Strickland did regularly spend the night with Frances Strickland. In the fall of 1980 Frances Strickland renewed her loan as a single person. The loan was similarly renewed in 1982 and in 1984 before the . FmHA became aware that she had married.
 
 
 3
 In January of 1981, Frances and Roy Strickland signed a separation agreement which Mrs. Strickland prepared herself. Under North Carolina law such an agreement would have resulted in a legal separation if the parties thereafter lived separately, but would have no legal effect if the parties continued to live together. The Stricklands did continue to spend nights together at Mrs. Strickland's house after signing the separation agreement, though on an irregular basis. They also maintained joint bank accounts and Mrs. Strickland filed federal and state tax returns for herself and Roy Strickland from 1980 to 1985 in which she showed the two of them as married filing jointly. She also advertised her bookkeeping business using the name "Frances P. Strickland."
 
 
 4
 Eligibility for an FmHA interest credit loan is determined by the total income of all adult members of the household. Mrs. Strickland's records with the FmHA were never changed to reflect her marriage. At trial, Mrs. Strickland and the loan officer from the FmHA both testified that the loan officer had called Mrs. Strickland in September or October of 1980 and asked her whether she had married. They differed over her response. The loan officer testified that she had told him she was not married and had no men friends in her home. Mrs. Strickland testified that she had told him that she had married but was not living with Roy Strickland and that the loan officer had shown no further interest. In 1982 and 1984 she renewed her interest credit loan as a single person. Had her marital status been known to the FmHA and had Roy Strickland's income been calculated with her own, Mrs. Strickland would not have been eligible for an interest credit loan.
 
 
 5
 In this appeal Mrs. Strickland argues that the trial judge's instructions to the jury on guilty knowledge were erroneous in that they did not adequately present her defense theory--a mistake made in good faith. In addition, she maintains that the instruction on ignorance of the law shifted the burden of proof to her on the element of knowledge. These contentions are without merit.
 
 
 6
 Early in its charge to the jury, the judge instructed the jury that Mrs. Strickland could not be convicted unless the government proved that she had acted with the specific intent to disobey or disregard the law. The charge further stated:
 
 
 7
 To establish specific intent, the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to deceive or conceal a material fact. Such intent may be determined from all the facts and circumstances surrounding the case.
 
 
 8
 An act or failure to act is knowingly done if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.
 
 
 9
 (R. Vol. IV at 366-67) (emphasis added).
 
 
 10
 This instruction amply presented to the jury Mrs. Strickland's defense that she had made a good-faith mistake, and informed the jury that they could not convict if they believed her testimony on this point. The instruction does not permit an inference of knowledge from a mere showing of careless disregard and, therefore, is not erroneous. United States v. Martin, 773 F.2d 579 (4th Cir. 1985).
 
 
 11
 The ignorance of the law instruction states again that in order to convict the jury must find that the action charged had been done knowingly. The instruction then adds:
 
 
 12
 The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise been [sic] obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of the facts may be inferred from willful blindness to the existence of a fact. It is entirely up to you as to whether you find any deliberate closing of the eyes and the inferences to be drawn from any such evidence.
 
 
 13
 A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge. Members of the jury, marriage is not a private affair involving the contracting parties alone. Society has an interest in the marital status of its members, and when a husband and wife live together in the same house and hold themselves out to the world to be man and wife, they are not separated. A husband and wife, to be legally separated, there must be a complete cessation of cohabitation.
 
 
 14
 As I previously instructed you during the trial, the law of North Carolina provides that a separation agreement, although signed by husband and wife, is a nullity, if, after entering into the agreement, the husband and wife spend the night together or resume marital cohabitation in the same residence. I instruct you that it is not necessary for husband and wife to have resumed sexual relations in order for the separation agreement to become a nullity.
 
 
 15
 With regard to acts committed after the defendant and Roy B. Strickland entered in a separation agreement[,] specifically with relation to defendant's statements on the Farmers Home Administration interest credit agreements as to her marital status, it is not necessary for the prosecution to prove that the defendant knew the effect of her renewed cohabitation with Strickland[.] [U]nless and until outweighed by evidence in the case to the contrary, the presumption is that every person knows the law and the effect of their conduct as it relates to their marital status.
 
 
 16
 However, evidence that the accused acted or failed to act because of ignorance of her marital status is to be considered by the jury in determining whether or not the accused acted or failed to act with specific intent as charged. I remind you that the burden is on the government to prove beyond a reasonable doubt that the defendant acted with specific intent as charged.
 
 
 17
 (R. Vol. IV at 372-74) (emphasis added).
 
 
 18
 We hold that neither instruction was erroneous and accordingly we affirm the conviction. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and argument would not significantly aid the decisional process.
 
 AFFIRMED